# United States Court of Appeals for the Federal Circuit

---

**FINJAN LLC,**
*Plaintiff-Appellant*

**v.**

**ESET, LLC, ESET SPOL. S.R.O.,**
*Defendants-Appellees*

---

2021-2093

---

Appeal from the United States District Court for the Southern District of California in No. 3:17-cv-00183-CAB-BGS, Judge Cathy Ann Bencivengo.

---

Decided: November 1, 2022

---

JUANITA ROSE BROOKS, Fish & Richardson P.C., San Diego, CA, argued for plaintiff-appellant. Also represented by JASON W. WOLFF; ROBERT COURTNEY, Minneapolis, MN.

NICOLA ANTHONY PISANO, Eversheds Sutherland (US) LLP, San Diego, CA, argued for defendants-appellees. Also represented by JUSTIN EDWIN GRAY, JOSE L. PATINO, SCOTT PENNER, REGIS CALVIN WORLEY, JR.

---

Before PROST, REYNA, and TARANTO, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Finjan, Inc. appeals the U.S. District Court for the Southern District of California's grant of summary judgment of invalidity. The district court construed the claim term "Downloadable" in the asserted patents to be restricted to "small" executable or interpretable application programs based on the definition of "Downloadable" provided by a patent in the same family that was incorporated by reference into the asserted patents. The district court determined that the asserted claims were indefinite and thus invalid. We reverse the district court's claim construction, vacate its grant of summary judgment, and remand for further proceedings.

## BACKGROUND

In 2017, Finjan, Inc. ("Finjan") filed suit against ESET, LLC ("ESET") in the Southern District of California, asserting that ESET infringed U.S. Patent Nos. 6,154,844 ("the '844 Patent"); 6,804,780 ("the '780 Patent"); 8,079,086 ("the '086 Patent"); and 9,189,621 ("the '621 Patent) (collectively, "the asserted patents" or "the patents-at-issue"). *Finjan, Inc. v. ESET, LLC*, 2017 WL 5501338, at *1 (S.D. Cal. Nov. 14, 2017) (*Claim Construction Order*). The asserted patents, which are all expired, are part of a family of patents directed to systems and methods for detecting computer viruses in a "Downloadable" through a security profile. *See, e.g.*, '844 Patent col. 1 ll. 23–27. Finjan claims priority for each of the asserted patents back to provisional application No. 60/030,639 ("the '639 application"), filed November 8, 1996. The family's chain of priority and incorporation by reference relationships are as follows:



J.A. 13.

On September 25 and 26, 2017, the district court held a *Markman* hearing. *Claim Construction Order* at *1. The court focused on the meaning of the term "Downloadable" and requested further briefing on that term.

"Downloadable" appears in the claims of all asserted patents. The '639 application first defines "Downloadable" as "an executable application program which is automatically downloaded from a source computer and run on the destination computer. Examples of Downloadables include applets designed for use in the Java™ distributing environment . . . ." J.A. 1863.

Non-asserted U.S. Patent Nos. 6,167,520 ("the '520 Patent") and 6,480,962 ("the '962 Patent") define Downloadables as "applets" and as "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer." '520 Patent col. 1 ll. 31–34; '962 Patent col. 1 ll. 38–41 (emphasis added). Two of the asserted patents, the '844 and '780 patents, define a Downloadable as "an executable application program, which is downloaded from a source computer and run on the destination computer." '844 Patent col. 1 ll. 44–47; '780 Patent col. 1 ll. 50–53. The patents list as examples Java applets and JavaScripts scripts. *Id.* Both patents incorporate the '520 patent by reference. '844 Patent col. 1. ll. 14–18; '780 Patent col. 1. ll. 19–23. The three remaining asserted patents, the '086, '621, and '755 patents, do not include a definition of "Downloadable" but incorporate the '962 and '780 patents by reference. '086 Patent col. 1. ll. 24, 34–35; '621 Patent col. 1 ll. 40–41, 58; '755 Patent col. 1. ll. 44, 58–59.

The district court construed the term "Downloadable" to mean "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer." *Claim Construction Order* at *2 (emphasis added). The court based its construction on the incorporation by reference of the '520 Patent.[1] *Id.*

---

[1]    The asserted patents also incorporate the '962 Patent by reference. The '962 Patent is substantially similar

at *1–2. The district court reasoned that the patent family contained "somewhat differing definitions" that "can be reconciled." *Id.* at *1. The court found that based on the definitions and examples included throughout the various patents in the family tree, the term Downloadable in the patents-at-issue should be construed to include the word "small" as defined in the '520 Patent. *Id.* at *2.

On April 23, 2019, ESET moved for summary judgment of invalidity based on indefiniteness. *Finjan, Inc. v. ESET, LLC*, 2021 WL 1241143, at *1 (S.D. Cal. Mar. 29, 2021). The court held oral argument and determined that there were genuine disputes of material fact over what a skilled artisan would have understood "Downloadable" to mean as of the effective filing date in 1997. *Id.* The court denied the motion without prejudice.

On March 10, 2020, the case went to trial. Three days later, the court vacated the remainder of the trial due to California's COVID-19 stay-home order. *Id.*

On August 21, 2020, ESET renewed its motion for summary judgment in light of the testimony from Finjan's expert during the trial. *Id.* On March 29, 2021, the district court granted the motion, finding the asserted patents indefinite based on the word "small" as used in the court's construction of "Downloadable." *Id.* at *5. Finjan timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

The Federal Circuit reviews a district court's grant of summary judgment under the standard applied in the respective regional circuit, in this case the Ninth Circuit. *See Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1355

---

to the '520 Patent. Reference to the '520 Patent definition throughout the opinion also applies to the '962 Patent.

(Fed. Cir. 2020). The Ninth Circuit reviews a grant of summary judgment de novo. *Id.* (citation omitted). "Summary judgment is proper when, drawing all justifiable inferences in the non-movant's favor, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Azko Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1338–39 (Fed. Cir. 2016) (quoting Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986)).

The Court reviews a district court's claim construction de novo and its underlying factual determinations for clear error. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325–26, (2015). "Whether and to what extent material has been incorporated by reference into a host document is a question of law." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000) (citing *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453–54 (Fed. Cir. 1984)).

"We review [a] district court's indefiniteness determination de novo." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1317 (Fed. Cir. 2015) (citation omitted). A claim is invalid for indefiniteness under 35 U.S.C. § 112 if its language, when read in light of the specification and prosecution history, fails to inform skilled artisans about the scope of the invention with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909–911 (2014).

## DISCUSSION

Finjan makes two arguments on appeal: (1) the district court erred by construing the term "Downloadable" to be limited to "small" executable application programs and (2) the district court erred by finding that the word "small" rendered the claims indefinite and thus, invalid. We address each issue in turn below.

Finjan argues that the district court erred in its construction and that the word "small" should not be read into the definition of "Downloadable." Appellant's Br. 27–28. We agree.

Claims must be read in light of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). That includes any patents incorporated by reference. Patents that are incorporated by reference are "effectively part of the host [patents] as if [they] were explicitly contained therein." *X2Y Attenuators, LLC v. U.S. Int'l Trade Comm'n*, 757 F.3d 1358, 1362–63 (Fed. Cir. 2014) (alterations in original) (citations omitted). Incorporation by reference of a patent "renders 'the entire contents' of that patent's disclosure a part of the host patent." *Id.* at 1363 (citing *Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1069 (Fed. Cir. 1997); Manual of Patent Examining Procedure § 608.01(p) (6th ed. 1996)). Accordingly, definitions in any incorporated patents or references are a part of the host patent.

Yet, "incorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent." *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1553 (Fed. Cir. 1996), *abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558 (Fed. Cir. 2000) (en banc). Rather, the disclosure of the host patent provides context to determine what impact, if any, a patent incorporated by reference will have on construction of the host patent claims. *See, e.g.*, *X2Y Attenuators*, 757 F.3d at 1363. "The disclosures of related patents may inform the construction of claim terms common across patents, but it is erroneous to assume that the scope of the invention is the same such that disclaimers of scope necessarily apply across patents. . . ." *Id.* at 1366 (J. Reyna, concurring).

The district court erred because it viewed the differing definitions throughout the patent family as competing and

determined that the asserted patents should be limited to the most restricted definition of the term. We disagree. Here, it is not necessary to limit the asserted patents because the two definitions are not competing. The use of a restrictive term in an earlier application does not reinstate that term in a later patent that purposely deletes the term, even if the earlier patent is incorporated by reference. *Modine Mfg.*, 75 F.3d at 1553 (finding that a grandparent patent defining "relatively small" to be "0.07 inches or less" did not incorporate this definition into the parent and child applications that deleted the definition).

The '520 Patent, which defines a Downloadable as "small," represents a subset of the patent family claiming an invention capable of downloading only small executable or interpretable application programs. That is because the disclosure in the '520 Patent focuses on applets as small executable or interpretable application programs. *See, e.g.*, '520 Patent col. 1 ll. 31–32. The '520 Patent summarizes the invention as "a system for protecting a client from hostile Downloadables. The system includes security rules . . . and security policies defining the appropriate responsive actions to rule violations such as terminating the *applet*, limiting the memory or processor time available to the *applet*, etc." '520 Patent col. 1 l. 66 to col. 2 l. 6 (emphases added).

The definition of "Downloadable" that does not include a size requirement refers to executable or interpretable application programs of all sizes, including, but not limited to, "small" executable or interpretable application programs. Because these two definitions can exist in harmony within the patent family, we do not necessarily have to apply the '520 Patent's definition to the asserted patents.

The '844 and '780 Patents describe a Downloadable as "an executable application program, which is downloaded from a source computer and run on the destination computer." '844 Patent col. 1 ll. 45–47; '780 Patent col. 1 ll.

51–53. This definition is not limited to "small" executable application programs. The '844 and '780 Patents list examples of Downloadables, including "Java™ applets," "ActiveX™ controls," "JavaScript™ scripts," and "Visual Basic scripts." '844 Patent col. 1 ll. 63–65; '780 Patent col. 2 ll. 3–4. These examples expand upon the sole example listed in the '520 Patent—applets. The '844 and '780 Patents define Downloadable to contemplate a broader functionality of the claimed invention not limited to downloading only "small" executable application programs, and the examples in the '844 and '780 Patents provide further support. Hence, in the '844 and '780 Patents, "Downloadable" should not be construed to include the term "small."

As noted, the '086, '621, and '755 Patents do not expressly define Downloadable but incorporate patents by reference that include both the '520 Patent's restricted definition of Downloadable with the word "small" and the broader definition without it. Similar to the '844 and '780 Patents, the '086, '621, and '755 Patents include examples expanding upon the '520 Patent's focus on "small" executable or interpretable application programs like applets as well. For example, the '086 patent recites: "Java™ applets and JavaScript™ scripts, ActiveX™ controls, Visual Basic, add-ins, and/or others . . . Trojan horses, multiple compressed programs such as zip or meta files." '086 Patent col. 2 ll. 3–9; '621 Patent col. 2 ll. 36–40; '755 Patent col. 2 ll. 36–40. Based on the context provided by the '086, '621, and '755 Patents, the term "Downloadable" should not be restricted to "small" executable application programs.

In sum, the term "Downloadable" as used in the '844, '780, '086, '621, and '755 Patents means "an executable or interpretable application program, which is downloaded from a source computer and run on the destination computer." We therefore reverse the district court's claim construction.

Because we reverse the district court's claim construction, we need not to review the entirety of the district court's determination of invalidity due to indefiniteness.

## CONCLUSION

We reverse the district court's claim construction and determine that Downloadable should be construed as "an executable or interpretable application program, which is downloaded from a source computer and run on a destination computer." We vacate the district court's grant of summary judgment based on invalidity due to indefiniteness and remand for further proceedings consistent with our claim construction.

**REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

### COSTS

No costs.